Felch
*v.*
Taylor.

*Oct. 6th,*
1832.

</div>

---

## WILLIAM ROBINSON JR. *et al. versus* DANIEL MANS-FIELD *et al.*

Where goods attached are placed by the officer in the hands of a receipter, who delivers them to the debtor, the officer's lien is gone, and the goods may be sold by the debtor or may be attached at the suit of another creditor.

If a bill of sale of goods is made to one, who in fact purchases for himself and a dormant partner, they may both join in an action of trespass for taking and carrying away the goods.

In an action of trespass against the defendants for attaching goods claimed by the plaintiffs under a bill of sale from the defendants' debtor, alleged by the defendants to be without consideration, the plaintiffs offered in evidence an account between themselves and such debtor; and it was *held*, that the account was not like a bill of particulars and was not conclusive upon the plaintiffs, but that testimony to show that the debtor owed them sums not mentioned in such account, was admissible.

If goods attached on a writ against a person to whom they do not belong, are delivered to the owner upon his written receipt and promise to re-deliver them to the officer on demand, the owner may nevertheless maintain trespass against the officer for the taking.

In an action by the officer upon such contract, the owner of the goods would be estopped to set up property in himself; in such action of trespass, therefore, by the owner against the officer, the measure of damages is the value of the goods at the time of the attachment, but without interest for the time during which the owner has the use of them under the receipt.

TRESPASS *de bonis asportatis*, brought by William Robinson junior and Sylvanus Robinson, sons of William Robinson senior,

Robinson
*v.*
Mansfield.

against Daniel Mansfield and William Larned.    The defendants pleaded the general issue ; also, that the goods were taken by Mansfield, a deputy sheriff, by virtue of a writ in favor of Larned against Robinson senior, and that Robinson senior was the proper owner of the goods.

At the trial, before *Wilde* J., it appeared that a part of the goods, consisting of stock and farming tools, was previously to November 18, 1826, the property of Robinson senior, and was claimed by the plaintiffs by virtue of a bill of sale thereof from Robinson senior to his son William alone, dated the 20th of November.    The same had been attached on the 18th, by Samuel Smith, a deputy sheriff, as the property of Robinson senior, on a writ in favor of Morris Larned, and had been delivered by the officer, on the same day, to one Kimball, who gave him a receipt for it and a promise to re-deliver it on demand.    Evidence was introduced by the plaintiffs, for the purpose of showing that the same property was sold by Robinson senior to his son William by consent of Kimball, by the bill of sale dated the 20th of November, and that the full value was agreed to be paid therefor, by William junior's securing Kimball from loss by reason of his receipt.    The only payment made by William junior at the time of the sale, was by the way of securing Kimball ; and a bond was produced, dated the 20th of November, given by him to Kimball, reciting the sale, and conditioned that he should save Kimball harmless on account of the receipt.    But evidence was introduced by the plaintiffs tending to show that the value of the property was paid to Kimball, in part by William junior, and in part by Sylvanus, and was applied to the payment of the execution of Morris Larned against Robinson senior.    The plaintiffs proved that William junior paid the bond to Kimball, in May, 1828, by notes due to Sylvanus from the Goodale Manufacturing Company and from Slater and Howard.    Evidence was introduced to show a delivery of the property in question, by Robinson senior to William junior.    The defendants contended, and introduced evidence to show, that the possession of William junior was merely colorable, and fraudulent and void as against the creditors of Robinson senior.

The defendants contended also, that so far as the stock and farming tools attached in the suit of Morris Larned were concerned, the action could not be maintained in the name of the present plaintiffs, but should have been brought in the name of Smith, the attaching officer in that suit. But the judge ruled that such attachment created a mere lien upon the property so attached, and that the action was well brought by the present plaintiffs.

The defendants contended further, that there was no evidence of a copartnership between the plaintiffs, or of any joint ownership of the goods sued for in this action. But there was evidence that Sylvanus was a dormant partner of his brother William, and that an agreement subsisted between them to share in the profit and loss of each other's business, and to own all their property in common. There was no evidence that Sylvanus ever had any other than a constructive possession of the property claimed by the plaintiffs. Whereupon it was contended by the defendants, that even if the jury should believe that Sylvanus was a dormant partner of his brother, they could not join in this action. But the judge ruled, that as the action was for a tort, they might well join.

The defendants introduced evidence to show, that large quantities of wood, timber and produce were, after the attachment, taken from the farm of Robinson senior, and actually appropriated to the payment of Kimball. To rebut this evidence, Robinson senior swore to the exhibit of his accounts with his sons William and Sylvanus, by which it appeared that a small balance was due to them. The defendants then introduced evidence to show, that upon examining the items embraced in the exhibit a large balance would be found to be due to Robinson senior. Whereupon it was testified by Robinson senior, that he was otherwise indebted to the plaintiffs than as appeared by the exhibit. The defendants objected to his testimony, on the ground, that as the plaintiffs had undertaken to make an exhibit of their accounts with him, they should not be permitted to travel out of it to prove any other indebtment. But the judge allowed the evidence to go to the jury.

At the time when Mansfield attached the goods mentioned in the plaintiffs' declaration, a horse, wagon and harness therein

mentioned were not removed by the officer, but were delivered to William junior, upon his written receipt and promise to re-deliver them to the officer on demand. In the receipt they were described as " taken on a writ in favor of William Larned against William Robinson," and they were valued in the receipt at $ 128. It was contended by the defendants, that as this property had always remained in the hands of one of the plain-tiffs, if they were entitled to recover any thing therefor, they should recover only nominal damages. But as there was an outstanding contract for the redelivery of this property to the officer, the jury were instructed, that if they found for the plain-tiffs in regard to it, they should find for its full value.

The jury were also instructed, that if they found for the plaintiffs, they should find for the value of the property attached by Mansfield, and that they might add simple interest upon that value up to the time of returning the verdict.

The jury returned a verdict for the plaintiffs, for the sum of $ 622·07.

The defendants moved for a new trial on account of supposed misdirections, as above stated.

<span style="margin-left:-3em">*Oct. 2d.*</span> The case was argued by *Tufts* and *Barton* for the defend ants, and by *Newton* and *W. Lincoln* for the plaintiffs.

It was insisted on the part of the defendants, in regard to the goods attached by Smith and alleged to have been sold by Robinson senior to his son William, that the special property was in Smith, who had the possession by his servant Kimball ; that the supposed sale was but a contract of sale, because the goods were incapable of delivery ; and that William junior, not being entitled to immediate possession, could not maintain an action of trespass. *Luddon* v. *Leavitt*, 9 Mass. R. 104 ; *Per-ley* v. *Foster*, ibid. 112 ; *Warren* v. *Leland*, ibid. 265 ; *Bond* v. *Padelford*, 13 Mass. R. 394 ; *Brownell* v. *Manchester*, 1 Pick. 232 ; 1 Chit. Pl. (edit. 1809) 167, 168 ; *Harrison* v. *M'Intosh*, 1 Johns. R. 380 ; Bac. Abr. *Trespass*, *C* 2 ; *Ward* v. *Macauley*, 4 T. R. 489.

But *per Curiam*. This objection is invalid, for the lien of Smith had been discharged and the obligation of Kimball sub-stituted for the goods. It has always been held, that where goods attached, are placed in the custody of a receipter in the

usual mode, and delivered to the debtor, they may be conveyed by the debtor or be attached again at the suit of another creditor. [See *Denny* v. *Willard*, 11 Pick. 519.]

The defendants further insisted, that Sylvanus, being merely a dormant partner of the other plaintiff, could not join in the action. *Lloyd* v. *Archbowle*, 2 Taunt. 324 ; *Lord* v. *Baldwin*, 6 Pick. 352. On this point the plaintiffs' counsel cited *Patten* v. *Gurney*, 17 Mass. R. 182 ; *Skinner* v. *Stocks*, 4 Barn. & Ald. 437 ; Gow on Partn. 154. *Per Curiam.* This exception cannot be maintained. It was not necessary that the bill of sale should be made to both of the plaintiffs, in order to give them a joint property. If made to one who agreed to purchase for both, both would take. By bringing this action they show their intent to treat the goods as joint property, and there is evidence in the case sufficient to show that they took jointly.

The counsel for the defendants further urged, that the account between the plaintiffs and their father, put into the case for the purpose of showing that their father was indebted to them, was like a bill of particulars, which is conclusive on the party filing it ; and therefore that the testimony of the father, that he was indebted in other sums not mentioned in the account, was inadmissible. But *per Curiam.* The account was not a bill of particulars, and the rules of practice in relation to a bill of particulars are not applicable. It was merely an exhibit of transactions between the father and the sons, but it does not purport to contain all the accounts between them. It was for the court, in its discretion, to receive other evidence, and the testimony in question was properly admitted.

It was further contended on the part of the defendants, that as the horse, wagon and harness were delivered to William junior himself, upon his receipt, and were not removed, there was no asportation, and a mere technical attachment would not support trespass *de bonis asportatis* ;. that if the action could be sustained for the taking, the damages must be nominal, as the property went instantly back into the hands of William junior, and he had ever since had the enjoyment of it ; and that the contract for re-delivery to the officer made no difference, for it was void for want of a consideration, if the officer committed a

Robinson
*v.*
Mansfield.

trespass in attaching ; at least the Court would not allow the circuity of action by which the officer would recover of William junior and then William junior would recover back from the officer.    *Gibbs* v. *Chase,* 10 Mass. R. 125; *Knap* v. *Sprague* 9 Mass. R. 258 ; *Fuller* v. *Holden,* 4 Mass. R. 498 ; *Learned* v. *Bryant,* 13 Mass. R. 225.    To this it was answered, that the attachment was a constructive removal ; that William junior could make no defence to an action upon his receipt, and at least he might elect to perform his contract ; and that the defendants could not suffer by a recovery in the present suit, for this property would be vested in them by the judgment. *Campbell* v. *Phelps,* 1 Pick. 62.

*Per Curiam.*    The ground of the decision at the trial was. that as the property had been delivered to William junior on a contract to re-deliver it to the officer on demand, it should be regarded as if it had been delivered to a stranger on a like contract.    It is said that the receipter had a valid defence against an action on the receipt ; but as the receipt states that the goods delivered to him and which he promises to keep and to re-deliver on demand, were taken on a writ against Robinson senior, we think he would be estopped in an action upon the receipt, from setting up property in himself.    *Johns* v. *Church,* 12 Pick. 561.    But the more important question is, whether the delivery of the property to one of the plaintiffs on his receipt, ought not to have been admitted in evidence in mitigation of damages.    It would seem to be equitable and to avoid circuity of action.    But there are several objections to this.    The officer held the receipt, having a claim to the goods as the property of Robinson senior, and did not give it up before or at the trial.    The receipter was bound to retain the property and have it ready for delivery on demand.    He could make some use of it, but he was not at liberty to sell it.    Besides, where one has committed a trespass by taking the property of another, the party injured is not obliged to take back the property.    The re-delivery of it, in many cases, would afford a very inadequate remedy.    The property may have fallen in value or become deteriorated in quality.    It would not therefore be safe to say that a re-delivery of the goods should be taken in discharge of the trespass.

<div style="text-align:right">Robinson<br>v.<br>Mansfield.</div>

The defendants objected that the verdict included interest on the property which was delivered to William junior upon his receipt.

*Per Curiam.* The instruction in regard to interest applied to the whole case and was proper except as to these particular goods, in respect to which no distinction was taken at the trial, and no request made to the judge to distinguish them from the operation of the general rule. As one of the plaintiffs actually had possession of these goods, and probably had the use of them, under the particular circumstances we think the jury might have been properly instructed not to allow interest on them. But if the plaintiffs remit this interest, according to their offer, the error will be no ground for granting a new trial.

Judgment was thereupon entered on the verdict, the amount of this interest being deducted.